STATE, Plaintiff in error, vs. LLOYD and another, Defendants in error.

*December 14, 1912—January 7, 1913.*

*Constitutional law: Self-incrimination: Privilege: Waiver: Duty to inform accused of his rights: State fire marshal: Powers and duties: Judicial power: Partial invalidity of statute: Criminal law: Information based on testimony of accused before fire marshal: Quashing: Burden of proof: Conspiracy: Trial of one conspirator alone.*

1. The provision in amendm. V, Const. of U. S., that no person shall be compelled in any criminal case to be a witness against himself, does not apply to prosecutions in state courts.
2. The similar provision in sec. 8, art. I, Const. of Wis., confers the right and privilege upon any person to refuse to give evidence which will or may incriminate him; but this privilege may be waived, and is generally held to be waived when he produces evidence or answers questions without raising the objection. The right to avail himself of this privilege is personal to the accused, and he himself must assert it.
3. It is proper for the judge to inform a witness of his right to refuse to answer, and under some circumstances the judge is bound to do so. But under ordinary circumstances, where no statute requires it and where the witness is of ordinary intelligence and under no duress, even when the questions are searching and inquisitorial in character, there is no duty resting upon the questioner or upon the tribunal holding the inquiry to inform the witness of his constitutional privilege.
4. A motion to quash an indictment is in the nature of a plea in abatement, and a ruling thereon quashing the indictment is ordinarily no bar to a prosecution of the same person for the same offense upon a new indictment or information.
5. *It seems* that ch. 228, Laws of 1907, as amended by ch. 211, Laws of 1909, is unconstitutional in so far as it attempts (in sec. 1946*k*, Stats.) to confer upon the state fire marshal the judicial power to issue subpœnas *duces tecum* and to punish for contempt.
6. But other provisions of said statutes are not so dependent upon the invalid portions that the whole must fall; and subpœnas may still be issued by any of the officers mentioned in sec. 4053, Stats., returnable before the state fire marshal, and an effective investigation carried on.

State v. Lloyd, 152 Wis. 24.

7. The state fire marshal is a ministerial officer, authorized to make investigations, and under no greater duty to inform persons interrogated by him of their constitutional privilege to withhold incriminating evidence than is the coroner or an examining magistrate; hence voluntary testimony given before him is admissible against the person testifying. The mere fact that the marshal was, by sec. 1946*k*, Stats., clothed with apparent but not real authority to punish for contempt and to compel the attendance of witnesses and compel their answers, makes no difference, if the witness failed to claim his privilege and no actual coercion was employed.

8. Upon a motion to quash an information because based on incriminating answers extorted from the accused and upon other facts discovered only by means of such answers, the burden is upon the moving party to make this appear.

9. Where such a situation does not appear, it is error to quash an information merely because based in part upon testimony voluntarily given before the state fire marshal.

10. It is not necessary to the protection of the constitutional rights of the accused in such case that the information be quashed, since such rights can be fully protected by rulings upon evidence on the trial.

11. While it requires two or more persons to commit the offense of conspiracy, one conspirator may be tried alone therefor.

ERROR to review an order of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

The writ of error was sued out by the state pursuant to ch. 224, Laws of 1909, to review an order quashing an information and discharging the accused.

For the plaintiff in error there was a brief by *W. Stanley Smith,* district attorney, and oral argument by *Russell Jackson,* deputy attorney general, *Mr. Smith,* and *Mr. J. A. Markham.*

*Thomas L. Kennan,* for the defendant in error *Converse W. Lloyd,* cited *State v. Gardiner,* 80 Minn. 130, 92 N. W. 599; *Counselman v. Hitchcock,* 142 U. S. 547, 12 Sup. Ct. 195; *Boyd v. U. S.* 116 U. S. 616, 631, 6 Sup. Ct. 524; *U. S. v. Edgerton,* 80 Fed. 374; *U. S. v. Bell,* 81 Fed. 830; *People v. Gillette,* 126 App. Div. 665, 111 N. Y. Supp. 133; *People*

*ex rel. Lewisohn v. O'Brien,* 176 N. Y. 253, 68 N. E. 353; *Brown v. Walker,* 161 U. S. 591, 632, 16 Sup. Ct. 644.

TIMLIN, J. The accused *Converse W. Lloyd,* informed against as *Con W. Lloyd,* was a fire insurance agent at Ashland, Wisconsin, representing among other fire insurance companies the five companies named in the information. The accused *Jacob V. Smeaton* was a director, secretary, treasurer, and manager of the Lake Superior Lumber & Box Company, a corporation. These two men were charged in the information with conspiracy to cheat and defraud the five insurance companies therein named by false pretenses and "by false and privy tokens and subtile means and devices." It is charged that on September 21, 1909, in furtherance of said conspiracy, five policies of insurance, one in each of the named companies, were by *Lloyd* issued to *Smeaton's* said corporation, covering property which was not in existence but had been wholly destroyed by fire on the day next preceding. That false and fraudulent proofs of such pretended loss were thereafter made and delivered to the fire insurance companies, which relied thereon and, being deceived thereby, paid the sum of $11,676.85 for such pretended loss. When the case was called for trial and before the jury was sworn, *Lloyd* moved to quash the information as to him upon the ground that he had been compelled, in an examination before the state fire marshal held at Ashland on the 9th day of August, 1910, to be a witness against himself, contrary to the Fifth amendment to the constitution of the United States and to sec. 8 of art. I of the constitution of the state of Wisconsin, and that the complaint and information in the case were predicated principally upon the testimony extorted from the accused in that examination. On the hearing of this motion there was offered in evidence and considered the information, an affidavit of *Lloyd,* a subpœna *duces tecum* issued by the state fire marshal and served on *Lloyd,* the testimony elicited

from *Lloyd* on the examination before the state fire marshal, and a statement by the district attorney that in preparing the complaint he used this testimony of *Lloyd,* together with that of other witnesses whose evidence had been taken by the fire marshal, and the complaint so prepared was predicated upon the testimony of *Lloyd* as well as upon other testimony.

Upon this showing the learned circuit court made an order quashing the information and discharging the accused *Lloyd.* Immediately thereafter the district attorney nolled the prosecution as against the accused *Smeaton.* The motion, the affidavit of *Lloyd,* the subpœna, the testimony of *Lloyd,* the ruling of the circuit court, the statement of the district attorney, and the nolle as to *Smeaton* are presented by a bill of exceptions. There is considerable discussion in the briefs relating to the Fifth amendment to the constitution of the United States, which provides, among other things, that no person shall be compelled in any criminal case to be a witness against himself. This Fifth amendment does not apply to prosecutions in state courts, and we may leave it out of consideration except in so far as judicial interpretation thereof by the learned federal courts may be advisory upon the interpretation of the similar provision found in our state constitution. *Brown v. Walker,* 161 U. S. 591, 16 Sup. Ct. 644; *Maxwell v. Dow,* 176 U. S. 581, 20 Sup. Ct. 448; *Barron v. Baltimore,* 7 Pet. 243; *Twitchell v. Comm.* 7 Wall. 321.

Sec. 8 of art. I of the constitution of this state, which provides, among other things, that no person shall be compelled in any criminal case to be a witness against himself, no doubt confers the right and privilege upon any person to refuse to give evidence which will or may incriminate him. He may, however, waive this privilege, and it is generally held to be waived where he produces evidence or answers questions without making the objection that the evidence called for has this tendency; but it is quite another question whether, assuming

that the constitutional right of a person has been invaded by compelling answers tending to incriminate that person, he can have an information quashed and be discharged from further prosecution where the preliminary complaint and information are based in part upon evidence so elicited and in part upon other evidence. Can this constitutional privilege, in the absence of an immunity statute, have the effect of not only excluding the evidence wrongfully elicited, but barring conviction upon any other evidence in a prosecution based upon information founded in part upon evidence thus unlawfully extorted and in part upon other evidence?

It is relevant to consider the nature of the motion which the accused elected to make. A motion to quash an indictment is in the nature of a plea in abatement, and a ruling upon such motion quashing the indictment or information is ordinarily no bar to a prosecution of the same person for the same offense upon a new indictment or information. *State v. Peterson, post,* p. 44, 139 N. W. 512. Precedents may be found like *U. S. v. Edgerton,* 80 Fed. 374; *Boone v. People,* 148 Ill. 440, 36 N. E. 99; and *People v. Haines,* 6 N. Y. Crim. 100, 1 N. Y. Supp. 55, where indictments were quashed because the accused was called and required to testify before the grand jury which returned the indictment against him on the evidence so elicited. There are also cases like *Mencheca v. State* (Tex. Crim.) 28 S. W. 203, and *Spearman v. State,* 34 Tex. Crim. 279, 30 S. W. 229, holding that such examination of the accused before the grand jury is no ground for a motion to quash the indictment. There is also a line of precedents holding that no indictment will be quashed for the reception of incompetent evidence by the grand jury unless it be shown by the moving party that the indictment rests solely upon such incompetent evidence. *Chadwick v. U. S.* 141 Fed. 225, 72 C. C. A. 343; *People v. Sexton,* 42 Misc. 312, 86 N. Y. Supp. 517; and in 17 Am. & Eng. Ency. of Law (2d ed.) 1283, a long list of cases is

cited in support of this rule. Mr. Wigmore in his work on
Evidence (vol. 3, sec. 2250 *et seq.*) and in other writings
(5 Harv. Law Rev. 71) has rendered a great service to the
public, and to the legal profession in particular, by his learned
and masterful exposition of the origin and scope of the con-
stitutional provision in question. The constitutional rights
of the citizen secured to him by the provision in question
should be carefully guarded, but it is safe to say that it was
never intended by the framers of the constitution that this
clause should be so construed and applied as to make it prin-
cipally the buckler and shield of crime or so as to furnish an
easy means of escape from deserved responsibility for crimi-
nal conduct. It may be freely conceded that there is great
inherent difficulty in adopting and following consistent rules
which will subserve both purposes. In the nature of things
there must often arise under such provisions close border-
line cases calling for keen discrimination and frequently
turning upon questions of fact. It has been suggested by
writers who deal with problems of government that the pres-
ence of this constitutional provision in the federal and most
state constitutions and the broad scope that has been by judi-
cial interpretation given to it has some causal relation to the
great number of crimes in this country or the inefficiency of
the machinery for detection and punishment thereof.

This court has never carried the construction of this pro-
vision of the constitution so far as to merit the criticism of
these publicists regarding the general judicial treatment of
the clause in question. The voluntary testimony of a party
accused of crime given on his preliminary examination may
be put in evidence against him by the state on his trial.
*State v. Glass,* 50 Wis. 218, 6 N. W. 500. The right to
avail oneself of this privilege by refusal to answer is personal
to the accused, and he himself must assert it. *Ingalls v.
State,* 48 Wis. 647, 4 N. W. 785. Evidence voluntarily
given by the accused at a coroner's inquest is admissible

against him. *Schoeffler v. State,* 3 Wis. 823. Persons who have once testified to incriminating matters without asserting their privilege may upon a second or a further examination assert the privilege against second or further disclosure. *Emery v. State,* 101 Wis. 627, 78 N. W. 145. It is proper for the judge to inform a witness of his right to refuse to answer, and under some circumstances the judge is bound to do so. Id. But under ordinary circumstances, where no statute requires it and where the witness is possessed of ordinary intelligence and is under no duress, even when the questions are searching and inquisitorial in character, there is no duty upon the part of the questioner or upon the part of the tribunal holding the inquiry to inform the witness of his constitutional privilege. To say there is such duty in a case of that kind is to add to the constitutional requirement. The cases of *Dickerson v. State,* 48 Wis. 288, 4 N. W. 321; *Mack v. State,* 48 Wis. 271, 4 N. W. 449; and *State v. Glass, supra,* support this conclusion, for there the witnesses were apparently not instructed by the examining magistrate or by the coroner respecting this constitutional privilege. In the absence of such instruction they gave incriminating testimony under oath upon interrogatories, and this testimony was held to have been afterward properly received in evidence against each. These cases are therefore in line with *State v. Duncan,* 78 Vt. 364, 63 Atl. 225, and *Regina v. Coote,* 12 Cox, Crim. Cas. 557. Therefore in the instant case there was no duty resting upon the state fire marshal to first advise the accused of his constitutional privilege in order to make the incriminating answers of the latter competent evidence against himself. It seems to be conceded that ch. 228, Laws of 1907, as amended by ch. 211, Laws of 1909, is unconstitutional in so far as it attempts to confer the judicial power of issuing subpœnas *duces tecum* and punishing for contempt upon the state fire marshal, and the concession is apparently well made. *Gough v. Dorsey,* 27 Wis. 119; *Van Slyke v.*

*Trempealeau Co. F. Mut. F. Ins. Co.* 39 Wis. 390; *Matter of Sims,* 54 Kan. 1, 37 Pac. 135; *Whitcomb's Case,* 120 Mass. 118.   But other provisions of these statutes are not so dependent upon the invalid portions thereof that the whole act must fall.   Such subpœnas may still be issued by any of the judicial officers mentioned in sec. 4053, Stats., returnable before the state fire marshal, and a very effective investigation so carried on.   The state fire marshal is therefore a ministerial officer of the state authorized to make investigations, and under no greater duty to inform persons interrogated by him or under his directions of their constitutional privilege of refusing to make incriminating answers or produce incriminating evidence than is the coroner or an examining magistrate.   The mere fact that he was clothed with apparent but not real authority to punish for contempt and to compel the attendance of witnesses and compel their answers makes no difference if the witness failed to claim his privilege and if no actual coercion was employed.   The examination returned to this court and preserved in the bill of exceptions shows for the most part no coercion.   Some questions the accused refused to answer upon other grounds, and as to some questions the examiner employed argument to induce answers, but in no case did the accused claim his constitutional privilege.   It may be that a few answers of the witness will be held inadmissible upon the trial because not a voluntary confession, but this is another and a different question.

The constitutional rights of the citizen against being compelled to incriminate himself are amply protected by upholding him in his refusal to give such evidence, and by rejecting the incriminating evidence which he is ordered or compelled to give notwithstanding his refusal, when this evidence is offered against him.   Cases may arise, it is true, in which the witness claimed his privilege, the claim was denied and he testified, and this testimony so given furnished the only means by which other testimony upon which his conviction

was procured was discovered.   This is rather a fanciful condition, but its occurrence is possible.   In such case, in order to exclude the testimony so discovered, the accused must show that it was discovered in this way.   Upon a motion to quash an information because based upon incriminating answers · extorted from the accused and upon other facts discovered only through means of these incriminating answers, the burden is upon the party moving to quash the information to make this appear.   It does not appear in the instant case, rather the contrary.   It is not necessary to the protection of the accused in his constitutional rights that the information be quashed in this case.   The accused, if guilty, may be convicted upon his own admissions voluntarily made in the examination before the state fire marshal or upon other evidence the discovery of which is not necessarily due to any self-incriminating and forced answers of the accused.   All the rights of accused can be taken care of by rulings upon evidence during the trial.   The learned circuit court erred in quashing the information upon motion of the accused.

Mention was made upon the argument of the fact, which appears also from the bill of exceptions, that the prosecution for conspiracy was nolled as against *Smeaton* after the information was quashed upon motion of *Lloyd*.   This affords no reason for affirming the order of the court below, because, while it requires two or more persons to commit the offense of conspiracy, one of these may be tried and prosecuted alone for the offense.   *Casper v. State,* 47 Wis. 535, 2 N. W. 1117; *People v. Olcott,* 3 Johns. Cas. 512; *People v. Richards,* 1 Mich. 216, 51 Am. Dec. 75 and note; *State v. Jackson,* 7 S. C. 283, 24 Am. Rep. 476; *People v. Tweed,* 5 Hun, 382; *Hutchins v. Hutchins,* 7 Hill (N. Y.) 104.

It follows that the order in question must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*—It is so ordered.