FRITZ, Plaintiff in error, v. STATE, Defendant in error.

*September 4—September 29, 1964.*

---

[7] *Christnovich v. Industrial Comm.* (1950), 257 Wis. 235, 43 N. W. (2d) 21.

92

94

For the plaintiff in error there was a brief and oral argument by *John William Calhoun* of Fond du Lac.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *William A. Platz,* assistant attorney general, and *Jack Steinhilber,* district attorney of Winnebago county.

WILKIE, J.   There are two questions presented on this appeal:

1. Is *coram nobis* the proper remedy to upset a first-degree murder conviction under the vicarious-liability statute on the ground that after time for appeal had expired, the sole accomplice was found not guilty because of insanity?

2. Did the trial court err in refusing to appoint counsel to pursue a writ of *coram nobis?*

*Coram nobis* is a statutory remedy [1] directed at the trial court. The type of error that may be reached by *coram nobis* was comprehensively considered in *Houston v. State* [2] wherein it was stated:

"An error to constitute a ground for the granting of the writ of *coram nobis* must not only be unknown to the court but would have prevented the judgment of the court. . . . Unless it clearly appears that an error of fact existed before judgment and but for such error the judgment would not have been entered, the writ of *coram nobis* should not be granted." [3]

The writ will not lie to correct an error of law. [4] The granting or denial of the writ is highly discretionary and

[1] Sec. 958.07, Stats.
[2] (1959), 7 Wis. (2d) 348, 96 N. W. (2d) 343.
[3] 7 Wis. (2d) at page 351, 96 N. W. (2d) at page 345.
[4] *Ernst v. State* (1923), 181 Wis. 155, 193 N. W. 978.

only a clear abuse of discretion on the part of the trial court will prompt a reversal.[5]

In essence, in order to use *coram nobis* the error complained of (1) must have been unknown at the time of the trial, and (2) would have prevented the judgment.

In the instant case, for *coram nobis* to be available, the evidence of Clayton's mental aberrations must have been unknown at the trial, *and* furthermore, his insanity must constitute a defense for her actions.

Although Clayton was not adjudged insane for better than a year and a half after the trial of Mrs. Fritz, it was no secret that he had had his problems. Mrs. Fritz (and her attorney) knew that he had been committed to Winnebago state hospital on two previous occasions. She also knew that after the murder, psychiatrists had found him incompetent to stand trial and that he was committed to Central state hospital. If her defense was to be based on Clayton's insanity, there was sufficient notice of his condition to have had that issue resolved at the trial or at least to have requested a postponement until a final determination on his sanity had been made. With this knowledge, Mrs. Fritz cannot lie in the weeds at the trial and then complain at this time, for the first time, that she was ignorant of her accomplice's condition. Even if it were found that at the trial she was unaware of Clayton's insanity, for *coram nobis* to lie, the fact of his insanity must, as a matter of law, have prevented her conviction.

Mrs. Fritz was convicted of first-degree murder under the vicarious-liability statute.[6] The jury was instructed on

---

[5] *Wilson v. State* (1956), 273 Wis. 522, 78 N. W. (2d) 917; *State v. Dingman* (1941), 239 Wis. 188, 300 N. W. 244.

[6] Sec. 939.05 (2), Stats., provides: "939.05 PARTIES TO CRIME. . . . (2) A person is concerned in the commission of the crime if he: (a) Directly commits the crime; or (b) Intentionally aids and abets the commission of it; or (c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. . . ."

the conspiracy element in the statute, but not on the aiding and abetting or other portions. The conviction then rested upon the jury's finding that Clayton, who actually did the deed, and Mrs. Fritz were coconspirators. Plaintiff in error contends that as it takes at least two people to conspire, where one of the two alleged coconspirators is acquitted there can be no conspiracy. The cases cited to this effect involve the inchoate substantive crime of conspiracy [7] and as to that crime the general statement of the law is correct. However, Mrs. Fritz was not convicted of the crime of conspiracy, but rather of first-degree murder under sec. 939.05, Stats. Sec. 939.05 (1) provides that a person can be convicted of a crime as a principal "although he did not directly commit it and although the person who directly committed it has not been convicted . . ." Sub. (2) of sec. 939.05 provides that a person "is concerned in the commission of the crime if he . . . [i]s a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it." It was the drafter's intent that people not present at the commission of crimes committed by their innocent agents be convicted as principals, and furthermore that the conviction of the actual doer is not essential to the conviction of others involved. [8]

Plaintiff in error also argues that she cannot be convicted of first-degree murder because her alleged coconspirator was incapable of imparting the necessary intent to her. This contention is also answered by sec. 939.05 (1), Stats. A conviction of the one who committed the crime is not required. It should make no difference whether the acquittal is based simply on a finding of not guilty, or on a finding of not guilty by reason of insanity.

---

[7] *Casper v. State* (1879), 47 Wis. 535, 2 N. W. 1117; *State v. Lloyd* (1913), 152 Wis. 24, 139 N. W. 514.

[8] Wisconsin Legislative Council, 1953 Report, Vol. V, Criminal Code.

Thus the insanity of Clayton would not have prevented her conviction, and this is a further reason why the trial court did not abuse its discretion in denying the writ.

Plaintiff in error is indigent and claims that the trial court erred in not appointing counsel to prosecute her writ of *coram nobis*.[9] It is violative of equal protection to deprive an indigent of the right to appeal or procure a writ of error.[10] Counsel was provided for Mrs. Fritz to pursue her writ of error from the order denying her *coram nobis* petition.

But was Mrs. Fritz entitled to the appointment of counsel by the trial court to prosecute her application for a writ of *coram nobis?* She did not have such an absolute right. We believe that the proper procedure, as in petitions for writs of *habeas corpus,* is for the court to which the petition is addressed to analyze the merits of the petition and if the court is persuaded that there is reasonable merit in the petition and a reasonable likelihood of success, then the court should appoint counsel for the indigent. From the analysis made by the trial court, confirmed here, the petition was baseless and we see no way in which the trial court could reasonably have exercised its discretion to grant the writ. Thus we conclude that the trial court committed no error in failing to appoint counsel. The fact that we appointed counsel to pursue her writ of error here and such counsel, though most ably presenting her position, has not convinced us that there was any merit whatsoever in her petition reinforces us in the view that no constitutional right of petitioner was violated when the trial court refused to name counsel.

*By the Court.*—Order affirmed.

---

[9] Relying on *Lane v. Brown* (1963), 372 U. S. 477, 83 Sup. Ct. 768, 9 L. Ed. (2d) 892.

[10] See *Lane, supra,* footnote 9; *Smith v. Bennett* (1961), 365 U. S. 708, 81 Sup. Ct. 895, 6 L. Ed. (2d) 39; *Burns v. Ohio* (1959), 360 U. S. 252, 79 Sup. Ct. 1164. 3 L. Ed. (2d) 1209.