GUNDLACH, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 12—May 6, 1924.*

*Adultery: Dismissal as to one defendant: Effect on prosecution of codefendant: Evidence: Sufficiency: Question for jury: Relevancy: Adulterous disposition of defendant: Trial: Repeated offenses: Election by state as to one relied on.*

1. The weight of testimony, including that relating to the impeachment of witnesses, is for the jury., p. 69.
2. Evidence set forth in the statement of facts is *held* to sustain a conviction of adultery. p. 70.
3. In a prosecution for adultery under sec. 4576, Stats., the dismissal of the case as to one defendant (the woman) did not require the court to discharge the other defendant with whom she was alleged to have committed the crime. p. 71.
4. In such a prosecution it is relevant to show acts of adultery or undue familiarity between the parties to show their adulterous disposition. p. 73.

5. Where the evidence showed that the parties occupied the same
   bed and that there was a continuous adulterous relationship
   during several months, including the time when the offense
   was charged to have been committed, the prosecution was
   not bound to elect as to the act relied on.   p. 73.

ERROR to review a judgment of the circuit court for Dunn
county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

An information was filed against defendants *Ray Gund-
lach* and Harriet Beaver which charged that on the 25th
day of September, 1922, "*Ray Gundlach* did commit the
crime of adultery with one Harriet Beaver. . . ." Upon
motion of defendant *Gundlach* to quash the information
because no offense was charged as to Mrs. Beaver, the
court directed the information to be amended. Thereupon
an amended information was filed which charged each de-
fendant with the crime.

After the jury had been sworn, the prosecution attempted
to prove the marriage of Harriet Beaver by the testimony
of her husband. An objection by counsel for defendant was
sustained, and the prosecution thereupon moved that the
case be dismissed as to Harriet Beaver. Counsel for *Gund-
lach* objected to the dismissal of the case as to Mrs. Beaver
unless it was dismissed as to him also; and, after the dis-
missal of the case as to Mrs. Beaver, moved that *Gundlach*
be discharged on the ground that, one of two defendants
having been acquitted of a crime charged against both
jointly, the other must be discharged also. The motion
was denied.

During the months of April, May, and June, 1922, Mrs.
Beaver lived with Ambrose and Mary Martin, whose farm
was about a half mile distant from that of *Gundlach*. She
was employed by *Gundlach* as housekeeper and customarily
worked there during the day and returned to the Martin
home at night.

In the latter part of June, 1922, the Martins and Mrs.
Beaver moved into the *Gundlach* house and remained there
with *Gundlach* during the month of September, 1922, when

the Martins moved back to their own farm and one Kingsley and his wife moved into the *Gundlach* house and lived with *Gundlach* and Mrs. Beaver.

On the 23d of June, 1923, Mrs. Beaver gave birth to a child, the certificate of birth giving the name of the mother as Harriet Phillips, the maiden name of Mrs. Beaver. *Gundlach* and Mrs. Beaver were arrested and charged with the crime of adultery in March, 1923.

On behalf of the State, Anna Martin testified that the *Gundlach* house consisted of four rooms, two on the first and two on the second floor; that during the time she and her husband stayed at the *Gundlach* house there were but two beds there; that she and her husband occupied the one downstairs, and *Gundlach* and Mrs. Beaver the one upstairs; that she had often seen *Gundlach* and Mrs. Beaver on their bed together, but that she had never witnessed any acts of intercourse there.

She testified further that she had seen *Gundlach* and Mrs. Beaver having intercourse in a certain blueberry patch near the *Gundlach* farm; that this occurred in July, 1922; and that she had also seen them in the act of intercourse about the middle of September, 1922, in a cornfield on the farm.

There was further testimony by this witness that one night in May, 1922, after the four had attended a party at a neighbor's house, they returned to the Martin home, and, there being only one bed, a bed was made on the floor for *Gundlach* and Mrs. Beaver, and that it was used by them. There was testimony by this witness to the effect that Mrs. Beaver, in the presence of *Gundlach,* had stated to the witness that she was pregnant by defendant. The testimony of this defendant was corroborated in some respects by that of her husband, who, however, testified to no specific acts of intercourse.

Defendant *Gundlach* testified that he hired Mrs. Beaver as housekeeper at a weekly wage; that she occupied one of the rooms upstairs and he the other; that they had never

occupied the same bed and had never had intercourse. His testimony was corroborated by that of Mrs. Beaver, who testified further that about the middle of September, 1922, while she happened to be alone at the *Gundlach* house, her husband visited and had intercourse with her.

Testimony was introduced on behalf of defendant that on March 29, 1923, Martin and his wife, in the presence of several witnesses, had stated that they had never seen defendant in the act of intercourse with Mrs. Beaver, and, in substance, that they had no reason to believe that any such relation had ever existed between them.

Several witnesses, including two sisters and the father of the witness Anna Martin, testified that her reputation for veracity was bad and that they would not believe her under oath. Similar testimony as to the witness Martin was offered.

At the close of the testimony counsel for defendant moved that the State be required to elect on which act it would rely for a conviction. The motion was denied.

The cause was submitted for the plaintiff in error on the brief of *Ira O. Slocumb* of Menomonie and *Dean & Dean* of Glenwood City, and for the defendant in error on that of the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *J. C. Ticknor,* district attorney of Dunn county.

JONES, J. There is considerable force in the argument of defendant's counsel that there was not sufficient evidence to establish the guilt of defendant beyond a reasonable doubt. The two principal witnesses for the State were Mr. and Mrs. Martin. The defense produced more than the usual number of character witnesses who swore that the reputation for truth and veracity of these two witnesses was bad and that they would not believe them under oath.

It was an unusual feature of this testimony that one of the character witnesses was the father, two were sisters, and another a brother-in-law of one of the witnesses. Ac-

cording to the homely old proverb "Blood is thicker than water," and although relatives often bring their quarrels into court, it seldom happens that those so closely related by blood as in this case will appear against each other as character witnesses when they have no financial interest in the litigation.

As to these two principal witnesses there was testimony of numerous witnesses who swore to statements made before the trial wholly inconsistent with their testimony. There was such impeachment of their testimony that it would not have been surprising if the jury had found the defendant not guilty.

In cases of this character the testimony is generally for the most part circumstantial. In this case it was both circumstantial and direct. There was evidently every opportunity for the defendants to have illicit intercourse, and if any credit is to be given to the testimony of Mr. and Mrs. Martin there was the adulterous disposition. It is apparent from all the testimony that none of these four persons had a very high standard of morals and that none of them paid much attention to public opinion.

There is one portion of the testimony of Mrs. Beaver of some significance which the jury may not have credited. It was undisputed that her husband abandoned her about the time when the illicit relations between her and *Gundlach* are claimed to have commenced. She swore that about the middle of September her husband returned, visited with her for about an hour, and that they had sexual intercourse. So far as appears this was their only meeting for many months. On June 23, 1923, a child was born to Mrs. Beaver which she gave her own maiden name. If sexual intercourse took place as she testified, her husband might have been the father of the child. If not, the defendant might have been its father.

It was of course within the province of the jury, who heard and saw the witnesses and noted their demeanor, to weigh the testimony, including that which related to im-

peachment, and we do not feel justified in setting aside their verdict which was sustained by the trial court.

We are now confronted with the question of law whether the court properly refused to discharge the defendant *Gundlach* because the case was dismissed as to the other defendant. Defendant's counsel rely upon the following statute:

"Any person who shall commit the crime of adultery shall be punished by imprisonment in the state prison not more than three years nor less than one year, or by fine not exceeding one thousand dollars nor less than two hundred dollars; and when the crime is committed between a married woman and a man who is unmarried both shall be deemed guilty of adultery and each shall be punished therefor." Sec. 4576, Stats.

They argue that jeopardy had attached to Mrs. Beaver; that adultery is the joint offense of both the participating parties, and if one is acquitted the other must be discharged. Counsel cite numerous cases, some of which have little bearing on the subject, but others tend to support their claim. Two of these cases are *Baumer v. State*, 49 Ind. 544, and *State v. Bain*, 112 Ind. 335, 14 N. E. 232.

In *People v. Munroe*, 190 N. Y. 435, 83 N. E. 476, the offense was robbery, where it was charged that the principal was aided by an accomplice actually present. It was held that where the accomplice was acquitted the principal must also be acquitted, because the evidence was the same and they were both engaged in the robbery or neither of them was.

In *Delany v. People*, 10 Mich. 241, the offense charged was lewd and lascivious cohabitation, and it was held that under the statute the offense was joint, of which both parties must be guilty or neither, and that both must be joined as defendants in the same indictment unless one of the parties be dead or unknown. But it is held that under some circumstances one might be guilty of adultery while the other was not.

But we are of the opinion that the weight of authority supports the view that, when two are indicted for adultery, the discharge of one defendant does not necessarily compel the acquittal of the other. In *Comm. v. Thompson,* 99 Mass. 444, the woman charged with adultery had made an admission that she was married. The court held that the admission was not binding on the other defendant, and as to him dismissed the case, but, as there was proof sufficient to sustain the judgment against the woman, judgment must be entered upon the verdict against her.

In *Solomon v. State,* 39 Tex. Crim. Rep. 140, 45 S. W. 706, after the testimony was closed, counsel for the state asked permission to dismiss the case against the woman. The other defendant objected because jeopardy had attached to his codefendant. It was held that the acquittal of one of the parties to the adultery does not bar the conviction as to the other, citing *Alonzo v. State,* 15 Tex. App. 378.

In *State v. Caldwell,* 67 Tenn. 576, defendant and a woman were jointly indicted for notorious lewdness. The parties severed for trial and the woman was acquitted. A plea was filed in bar to the further prosecution on the ground that the acquittal of the woman was equivalent to an acquittal of the man, as the offense could only be committed by two persons. It was held that the acquittal of one could not show that the other was not guilty.

In *State v. Simpson,* 133 N. C. 676, 45 S. E. 567, it was held, overruling former cases, that in a prosecution for fornication and adultery one defendant might be convicted and the other acquitted.

In *State v. Carroll,* 30 S. C. 85, 8 S. E. 433, in a trial for adultery, appellant objected to being tried in the absence of his codefendant, the offense being joint and the two being jointly indicted. The court said (p. 89):

"Certainly the fact that these two parties were jointly indicted is not sufficient to forbid the trial of one without the presence of the other; for this would lead to the extraordi-

nary (not to use any harsher term) result, that, where two or more persons commit any crime, however atrocious it may be, for which they are jointly indicted, the escape of one by eluding arrest affords absolute immunity to all the rest. The books, however, are full of cases which show that the law is not subject to such a reproach."

In *State v. Ellis,* 74 Mo. 385, it was held that on a charge of incest one defendant might be convicted.

There are numerous cases in which it is held that where violence has been used upon a woman, or where she was insane, or drunk, or under some misapprehension as to the existence of the marriage relation, one may be acquitted and the other convicted. These rest upon the view that, while the criminal intent may exist in the mind of one of the parties to the physical act, there may be no such intent in the mind of the other party. *State v. Sanders,* 30 Iowa, 582; *State v. Donovan,* 61 Iowa, 278, 16 N. W. 130; *State v. Eggleston,* 45 Oreg. 346, 77 Pac. 738.

The rule that the discharge of one defendant charged with adultery does not necessarily require the acquittal of the other is supported by other authorities. 3 Wharton, Crim. Law (11th ed.) § 2084; 2 Corp. Jur. 15; *U. S. v. Topino,* 35 Philippine Rep. 901; *U. S. v. Feliciano,* 36 Philippine Rep. 753.

The exact question here involved has never been decided by this court. In *Vought v. State,* 135 Wis. 6, 114 N. W. 518, 646, there was a charge of larceny against several defendants in which it was shown that all had participated in a fraudulent scheme. Two of the defendants were acquitted and two convicted. It was urged by the appellant that under the evidence the offense could not have been committed unless the others were equally guilty, and that he was exonerated by their acquittal. Among other cases cited in the opinion of the court were the Texas cases above cited. The conviction was sustained.

In *State v. Lloyd,* 152 Wis. 24, 139 N. W. 514, it was

held that, although it requires two or more persons to commit the offense of conspiracy, one of them may be tried and prosecuted alone for the offense.

In the case at bar it appeared to the district attorney and the court that when the motion for the discharge of Mrs. Beaver was made there was insufficient evidence to sustain the charge against her, and the case was dismissed. Whether this dismissal was proper under the circumstances it is unnecessary to decide. As the case progressed, the evidence of her marriage was produced and the jury and court were satisfied that the guilt of *Gundlach* was established beyond a reasonable doubt. However illogical it may seem that under such circumstances one of the defendants should escape and the other be convicted, there seems little reason for complaint by one who is guilty in fact, and the weight of authority seems to sustain that view.

Counsel for defendant urge that the State should have been required to elect the specific act on which it relied for conviction. On this proposition several cases are cited, among which are two decisions of this court in which rape was the offense charged, and in the third the offense was the unlawful sale of liquor. In the present case the information charged that the offense was committed on September 25, 1922. According to the evidence produced by the State, *Gundlach* and Mrs. Beaver were occupying the same bed, beginning July 1st, and for several months afterward, including September. It is well settled that where adultery is the offense charged it is relevant to show acts of adultery or undue familiarity between the same persons to show their adulterous disposition. 1 Ruling Case Law, 646; 2 Corp. Jur. 23, 24; *Baker v. U. S.* 1 Pin. 641; *Comm. v. Nichols,* 114 Mass. 285.

In this case the jury probably believed that there was a continuous adulterous relationship during several months, including the time when the offense was charged to have been committed. Under such circumstances the prosecu-

tion was not bound to elect as to the act relied on. 2 Corp. Jur. 28; *State v. Higgins,* 121 Iowa, 19, 95 N. W. 244; *State v. Hasty,* 121 Iowa, 507, 96 N. W. 1115.

We think the court observed this rule in his charge to the jury which is excepted to. The jury were told that before they could convict they must all be convinced beyond a reasonable doubt that the act was committed at the place alleged at some particular time between July 1st and September 25th; that it was not sufficient that some of them might be convinced that the act of adultery was committed at one time and the others that he committed the act at some other time. There are many exceptions to the instructions given by the court. The only important exceptions raise in various forms, and in detail, objections relating to the two main legal questions which we have discussed and therefore do not call for further consideration. We conclude that there is no sufficient ground for reversing the judgment.

*By the Court.*—Judgment affirmed.