**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 2, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2482-CR**

Cir. Ct. No. 2020CF1911

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

EARL L. PARR,

    DEFENDANT-APPELLANT.

       APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID A. FEISS and KORI L. ASHLEY, Judges. *Affirmed*.

       Before White, C.J., Colón, P.J., and Geenen, J.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Earl L. Parr appeals from a judgment of conviction for first-degree reckless injury and first-degree recklessly endangering safety and an order of the trial court denying Parr's motion for postconviction relief.[1]  For the reasons set forth below, we affirm.

## BACKGROUND

¶2    On May 22, 2020, the State charged Parr with one count of first-degree reckless injury and one count of first-degree recklessly endangering safety, both with the use of a dangerous weapon, as a result of a shooting that occurred on May 15, 2020, resulting in injury to G.S. and endangering M.M.[2]  As alleged in the criminal complaint, G.S. was outside cleaning his mother's car when his friend M.M. approached him and told him that he "had gotten into it" and needed help. Shortly thereafter, G.S. and M.M. heard gunshots.  Eyewitnesses to the shooting indicated that a gold Ford Taurus drove by and a passenger shot a rifle while hanging out the window.  M.M. identified Parr in a photo array as the shooter.

¶3    The case proceeded to a jury trial.  The State generally argued at trial that Parr, as a passenger in the Ford Taurus, fired shots out the window, hitting G.S. and nearly hitting M.M.  The defense argued that M.M. misidentified Parr as the shooter, and the defense emphasized an eyewitness account that identified the

---

[1] The Honorable David A. Feiss presided over Parr's trial, entered the judgment of conviction, and imposed Parr's sentence.  The Honorable Kori L. Ashley entered the order denying Parr's postconviction motion.  For ease of reference, we refer to both as the trial court.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use pseudonyms when referring to the victims.  All references to the Wisconsin Statutes are to the 2023-24 version.

shooter as skinny and providing a general description of the shooter that could not have been Parr.

¶4  Both G.S. and M.M. generally testified consistent with the allegations in the criminal complaint. G.S. testified that he was cleaning his mother's car on May 15, 2020, when M.M. approached him saying that he "was into it with somebody." G.S. stated that he then heard "like a pack of firecrackers was going of[f] in the middle of [the] street" and M.M. hit the ground. G.S. collapsed after the firecrackers were done going off, and he had to be carried into the house. M.M. testified that, about 45 minutes prior to the shooting, he saw Parr down the street in a gold Ford Taurus. He then went over to see G.S., and while he was with G.S., the gold Ford Taurus drove by. M.M. stated that he saw Parr hanging out the window with a rifle just before the shots were fired.

¶5  Parr's girlfriend's father and brother also testified at trial. The father testified that his daughter drove a gold Ford Taurus and that she let other people, including Parr, drive it. The brother testified that he owned a rifle that he reported stolen after the shooting, and he told police that when he asked Parr about the whereabouts of the rifle, Parr responded not to worry about where the rifle was.[3]

¶6  The parties further presented a stipulation from an eyewitness. The stipulation provided that the eyewitness saw a man with a "thin build" get into the passenger side of a gold Ford Taurus and sit in the window holding a rifle. She stated that the Ford Taurus drove away and she heard gunshots a short time later.

---

[3] Ballistics testing done on the casings found at the scene of the shooting and on casings from the backyard of the brother's house indicated a match, suggesting that all the casings came from the brother's rifle.

¶7 During deliberations, the jury sent two questions. The first question asked, "Does count 1 require that the defendant shot the weapon?" After discussions with counsel, the trial court responded, "Please refer to the Jury Instruction 1250, Element 1 which defines the term 'cause.'" Later, the jury sent a second question asking, "If the jury is unanimous on the verdict but only majority is in agreement to the added question of 'did the defendant commit such crime while using a dangerous weapon' can the jury continue or does the added question also have to be unanimous?" The trial court responded, "The answer to the dangerous weapon question must be unanimous."

¶8 The jury ultimately returned a verdict finding Parr guilty of first-degree reckless injury and first-degree reckless endangering safety, but the jury did not find that Parr committed either offense with the use of a dangerous weapon. Parr was subsequently sentenced to thirteen years of imprisonment, bifurcated as eight years of initial confinement and five years of extended supervision.

¶9 Parr moved for postconviction relief. He argued that the trial court committed plain error when it responded to the jury's first question by directing the jury to review the jury instruction. He also argued that trial counsel was ineffective for failing to object to the trial court's response.

¶10 The trial court denied Parr's motion without a hearing. In so doing, the trial court found that the response to the jury questions was "entirely proper" and rejected Parr's arguments that the trial court committed plain error or that trial counsel was ineffective. The trial court reasoned that accepting Parr's arguments required engaging in "after-the-fact speculation as to how the [trial] court's response might have influenced the verdict." The trial court recognized that the

jury rendered an inconsistent verdict but stated, "[T]here could be any number of reasons why the jury reached the verdicts that they did, but the verdicts cannot be upset by speculation or inquiry into such matters." Thus, the trial court denied Parr's motion without a hearing.

¶11    Parr appeals. Additional relevant facts will be set forth as necessary.

## DISCUSSION

¶12    On appeal, Parr raises three main issues. He argues that the trial court committed plain error with its response to the jury's question, that trial counsel was ineffective for failing to object to the trial court's response, and that he is entitled to a new trial in the interest of justice because the real controversy was not fully tried.

### I.    Plain Error

¶13    Parr argues that the trial court committed plain error when it responded to the jury's first question. He argues that the trial court's response invited the jury to reach a verdict that convicted him of a crime for which he was not charged and tried. More specifically, Parr contends that because the jury found him guilty of first-degree reckless injury and first-degree reckless endangering safety but did not find that he committed either crime with the use of a dangerous weapon, the jury's verdict reflects its conclusion that Parr was guilty of being the driver of the gold Ford Taurus. Parr then contends that because the State never presented any charges based on Parr as the driver of the vehicle and only ever presented the theory that Parr was the passenger who shot the rifle, Parr argues that the jury convicted Parr of a crime with which he was never charged or tried.

5

¶14    "Plain error is 'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" ***State v. Jorgenson***, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (citation omitted). The error "must be 'obvious and substantial.'" ***Id.*** (citation omitted). Our supreme court has cautioned that "[c]ourts should use the plain error doctrine sparingly." ***Id.***

¶15    In this case, the trial court's response directing the jury to the jury instruction on the elements of the crime is not an obvious and substantial error requiring our invocation of the plain error doctrine. Indeed, the trial court's response to the jury's question was entirely reasonable. Directing the jury to review an already given jury instruction in no way enabled or directed the jury to find Parr guilty of something other than what he was accused of or directed the jury to render a verdict finding Parr guilty of first-degree reckless injury and first-degree reckless endangering safety but not with the use of a dangerous weapon. Therefore, we are not persuaded that this case requires our invocation of the plain error doctrine.

### II.    Ineffective Assistance of Counsel

¶16    Parr renews his argument from his postconviction motion that his trial counsel was ineffective for failing to object to the trial court's response to the jury's first question. A defendant must establish two elements to demonstrate that he received ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance resulted in prejudice to the defense." ***State v. Balliette***, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334.

¶17    We must first "determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." ***State v.***

*Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. "If the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. In such a case, we review the trial court's discretion to grant or deny a hearing for an erroneous exercise of discretion. *Id.*

¶18    In making his argument, Parr again highlights the jury verdicts and argues that his trial counsel was ineffective for failing to object to the trial court's response to the jury's questions, particularly as it relates to the trial court's response to the jury's first question. He further argues that he was prejudiced because he was effectively convicted of driving the gold Ford Taurus, a crime with which he was not charged or tried.

¶19    By contrast, the State argues that the record conclusively demonstrates that trial counsel's performance was not deficient because the trial court's response was entirely reasonable and appropriate. The State further argues that the record conclusively demonstrates that Parr suffered no prejudice because there is no way of knowing how the jury reached the verdict it did and the inconsistency in the verdict may have nothing to do with the trial court's response to the jury's question. We agree with the State.

¶20    In short, there was nothing to which trial counsel should have objected. The trial court's response to the jury's question was entirely reasonable, and any objection by trial counsel was unwarranted. *See State v. Counihan*, 2020 WI 12, ¶51 n.15, 390 Wis. 2d 172, 938 N.W.2d 530 ("The failure to raise a meritless objection does not constitute deficient performance."). Additionally,

while the verdicts may have been inconsistent, it is also pure speculation to say that trial counsel's failure to object to the trial court's response to the jury's question led to the verdicts rendered. *See State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999) (stating that a defendant must "offer more than rank speculation to satisfy the prejudice prong"). Thus, we conclude that the record conclusively demonstrates that Parr's claim of ineffective assistance of counsel fails.

### III. Interest of Justice

¶21 Parr also argues on appeal that he is entitled to a new trial in the interest of justice because the real controversy was not fully tried. As with his other arguments, he contends that the jury's verdict finding him guilty of the charged offenses without the use of a dangerous weapon leads to the conclusion that he was convicted of driving the Ford Taurus, a crime for which he was not charged or tried.

¶22 Our power to grant a new trial in the interest of justice is a discretionary reversal power that "should be exercised sparingly and with great caution." *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Only in "exceptional cases" will we grant a new trial in the interest of justice. *State v. Kucharski*, 2015 WI 64, ¶23, 363 Wis. 2d 658, 866 N.W.2d 697. We independently determine whether to grant a new trial in the interest of justice. *Williams*, 296 Wis. 2d 834, ¶12.

¶23 While we recognize an inconsistency in the verdicts rendered by the jury given the theory of the case presented at trial, we nevertheless conclude that this is not an exceptional case warranting an exercise of our discretionary reversal power. An inconsistent verdict by itself does not require reversal of a judgment.

*See* **State v. Thomas**, 161 Wis. 2d 616, 631, 468 N.W.2d 729 (Ct. App. 1991) (citing **United States v. Powell**, 469 U.S. 57 (1984)). Indeed, consistency in a verdict is not required. **State v. Mills**, 62 Wis. 2d 186, 191, 214 N.W.2d 456 (1974). "[T]here is no way of knowing whether the inconsistency was the result of leniency, mistake, or compromise." **Thomas**, 161 Wis. 2d 616 at 631 (citing **Powell**, 469 U.S. at 65); *see also* **Powell**, 469 U.S. at 65 ("[S]uch inconsistencies often are a product of jury leniency.").

¶24 In this case, it is pure speculation to say that the jury found Parr guilty of driving the Ford Taurus instead of being a passenger shooting the rifle based solely on the inconsistency in the verdicts. *See* **Powell**, 469 U.S. at 66 ("[A]n individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."). As both parties recognize, the only theory presented at trial was that Parr was the shooter, and the defense presented at trial focused on undermining M.M.'s identification as Parr as the shooter. The theory of Parr as the driver was not presented at trial, and there is no way of knowing if the jury, as Parr contends, reached the verdicts rendered based on its acceptance of a theory that was not even presented at trial. Therefore, we conclude that any inconsistency in the verdicts rendered does not require discretionary reversal in the interest of justice.

## CONCLUSION

¶25 We are unpersuaded that the trial court's response to the jury's question amounts to plain error or that trial counsel was ineffective for failing to object to the trial court's response. We are similarly unpersuaded that the

9

inconsistency in the verdicts requires an exercise of our discretionary reversal power. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.